Filed 12/13/24  Williams v. U.S. Bancorp Investments CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SCOTT WILLIAMS et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>U.S. BANCORP INVESTMENTS, INC., et al.,<br><br>Defendants and Respondents. | A168789<br><br>(San Francisco City & County Super. Ct. No. CGC10499011) |

Plaintiffs Scott Williams, Michael Martin, and Jeremy Freitas (collectively, plaintiffs) appeal after the trial court denied their motion for class certification in this wage and hour case against defendants U.S. Bancorp Investments, Inc. (USBI) and U.S. Bancorp (collectively, defendants).  Plaintiffs contend the court erred by concluding that individual rather than common issues would predominate in determining the applicability of certain exemptions to the overtime and break requirements at issue here.  We affirm.

## I. BACKGROUND

Plaintiff Williams filed this putative class action on April 23, 2010.  The trial court stayed proceedings in September 2010, pending developments in another case, *Burakoff v. U.S. Bancorp* (Super. Ct. L.A. County, 2012,

1

No. BC341430). The court lifted the stay in July 2013. The trial court later denied a motion by defendants to compel arbitration of Williams' individual claims and to dismiss the first amended class complaint, and in June 2016 we affirmed the denial of the motion to compel. (*Williams v. U.S. Bancorp Investments, Inc.* (June 27, 2016, A141199) [nonpub. opn.].) On remand, after conducting discovery relevant to class certification, defendants renewed their motion to compel arbitration of Williams' individual claims and to dismiss the class claims, and the trial court granted the motion in October 2018. We reversed in a June 2020 decision. (*Williams v. U.S. Bancorp Investments, Inc.* (2020) 50 Cal.App.5th 111, 113, 116.)

Plaintiffs Williams, Martin, and Freitas filed the operative second amended complaint (SAC) on May 9, 2023. The SAC alleges defendants employed plaintiffs as commission paid employees. Williams was employed as a financial advisor and investment financial consultant from June 2005 to September 2008; Martin was employed as a financial advisor from October 2009 to August 2011; and Freitas was employed as a financial advisor until 2016.[1]

Plaintiffs allege defendants misclassified plaintiffs and the putative class as exempt employees because they received sales commissions. Plaintiffs allege seven causes of action (all under California statutes and

---

[1] As we discuss below, the proposed plaintiff class consists of financial advisors (FAs) who were employed by defendant USBI, a subsidiary of defendant U.S. Bancorp. In its order addressing class certification, the trial court noted that the FAs "held various titles at different times during the class period, including Financial Consultant, Investment Financial Consultant, Financial Advisor, Investment Relationship Manager, and Wealth Management Advisor." But "the parties agree[d] that despite the different job titles, FAs' job descriptions and responsibilities remained substantially similar over the class period."

regulations): (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) wages not timely paid upon termination; (5) wages not timely paid during employment; (6) noncompliant wage statements; and (7) violations of California Business and Professions Code section 17200 et seq.

Plaintiffs moved for class certification. They sought to certify a class consisting of "[a]ll commission paid employees who worked for Defendants in the State of California at any time from May 9, 2008 until the date of certification." The proposed class consists of FAs employed by USBI. The trial court stated it was uncontested that "the putative class consists of some 310 members."

Pointing to defendants' common policies, plaintiffs contended they could show by common proof that defendants misclassified FAs as exempt and failed to pay them overtime wages or provide them with required meal and rest periods. Plaintiffs acknowledged that "liability will turn on Defendants' ability to prove their affirmative defense of exemption: namely, that Class Members qualified for the administrative exemption, outside sales exemption, and/or commissioned employee exemption."[2] Plaintiffs contended,

---

[2] The exemptions at issue are set forth in Industrial Welfare Commission (IWC) wage order No. 4-2001, which is codified in the California Code of Regulations. (Cal. Code Regs., tit. 8, § 11040, subds. 1(A)(2) [administrative exemption], 1(C) [outside salesperson exemption], 3(D) [commissioned employee exemption].) As we discuss below, in addressing plaintiffs' class certification motion, the trial court focused on the administrative exemption.

"The IWC was defunded in 2004, but its wage orders remain in effect. [Citation.] The California Supreme Court has instructed that "[t]he IWC's wage orders are to be accorded the same dignity as statutes." ' " (*Rodriguez v. Parivar, Inc.* (2022) 83 Cal.App.5th 739, 745, fn. 2.)

however, that common issues also predominated as to the applicability of those exemptions.

Defendants opposed the class certification motion on the principal ground that whether any given FA qualifies for any of the exemptions they raised as a defense "entails a heavily factual, individualized inquiry, rendering class treatment unworkable." FAs are licensed investment professionals who advise USBI's clients on a variety of investment vehicles. A core function of their job is the "suitability analysis," which "involves an in-depth interview of a client and analysis of their holistic financial history, condition, and goals to form a reasonable basis to recommend a particular investment strategy." The trial court found that defendants' evidence showed "that the variety of FAs' tasks and the way they performed their duties varied greatly during the class period, depending on numerous factors including individual FAs' own decisions, experience levels, the day or week in question, the clients' needs, etc."

In their reply, plaintiffs argued that the breadth of FAs' duties and the "variance" in how they perform them are irrelevant, because plaintiffs' theory is that "FAs are *ineligible* to be classified exempt under the administrative exemption . . . because they are primarily engaged in sales and in their duties and tasks that are directly and closely related to sales and that are properly viewed as a means of carrying out sales." Plaintiffs contended that whether the various tasks performed by FAs are directly and closely related to selling USBI's financial products is a predominant common question susceptible to common proof.

On September 1, 2023, the trial court denied the class certification motion in a detailed order. The court concluded: "Plaintiffs have not met their burden to establish that common questions will predominate because of

4

the individualized inquiries necessary to determine their misclassification theory of liability, and specifically the applicability of the administrative and other exemptions on which Defendants rely as affirmative defenses." The court also found plaintiffs had not shown their proposed trial plan could fairly and efficiently manage the individualized issues.

Plaintiffs appealed.

## II. DISCUSSION

Plaintiffs contend the trial court erred in concluding they had not met their burden to show common issues would predominate in determining the applicability of the administrative exemption to the overtime and break requirements. We find no error and will affirm.

### A. *Legal Standards*

"Class certification requires proof of three things: (1) ' "a sufficiently numerous, ascertainable class," ' (2) ' "a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods." ' [Citation.] The required community of interest exists when common questions of law or fact predominate, the class representatives have claims and defenses typical of the class, and the class representatives can adequately represent the class." (*Williams v. U.S. Bancorp Investments, Inc., supra,* 50 Cal.App.5th at p. 118.) The trial court found plaintiffs had not established "the predominance (commonality) element," i.e., that common questions would predominate.[3]

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within

---

[3] The court noted defendants did not dispute numerosity, ascertainability, or adequacy of representation.

the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." ' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022 (*Brinker*).)

A ruling on class certification " 'generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' " (*Brinker, supra,* 53 Cal.4th at p. 1022.) "Predominance" (the specific class certification element that is at issue here) "is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. [Citation.] We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' " (*Ibid.*)

## B. *Analysis*

IWC wage order No. 4-2001 (wage order), which governs persons employed in "professional, technical, clerical, mechanical, and similar occupations"[4] and is codified in the California Code of Regulations, exempts persons employed in "administrative" capacities from overtime pay, meal period, and rest period requirements. (Cal. Code Regs., tit. 8, § 11040, subds. 1(A)(2), 3, 11, 12.) This exemption is an affirmative defense, for which

---

[4] The category of "Professional, Technical, Clerical, Mechanical, and Similar Occupations" is defined in part as including "professional, semiprofessional, managerial, supervisorial, laboratory, research, technical, clerical, office work, and mechanical occupations." (Cal. Code Regs., tit. 8, § 11040, subd. 2(O).) The parties do not dispute that the FAs who are plaintiffs and putative class members here fall within this category of occupations.

6

the employer bears the burden of proof.  (See *Rodriguez v. Parivar, Inc.*, *supra*, 83 Cal.App.5th at p. 745 [addressing an "executive" exemption for the public housekeeping industry found at Cal. Code Regs., tit. 8, § 11050, subd. 1(B)(1)].)

In the group of occupations at issue here, "[a] person employed in an administrative capacity" means any employee whose work meets the five prongs of the exemption, including that the employee is "primarily engaged in duties that meet the test of the exemption."  (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f).)[5]  To illuminate the meaning of this phrase,

---

[5] As relevant here, the five prongs that must be proven to establish that a person is employed in an "administrative capacity" are that the person is someone (a) whose duties and responsibilities involve "[t]he performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his employer's customers"; (b) who "customarily and regularly exercises discretion and independent judgment"; (d) who "performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge"; (f) who is "primarily engaged in duties that meet the test of the exemption"; and (g) who earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment, defined as 40 hours per week. (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(a), (b), (d), (f), (g).)

The principal disputed issue in this appeal is whether common or individual issues would predominate in determining whether prong (f) of the exemption is satisfied, i.e., whether an FA is "primarily engaged in duties that meet the test of the exemption."

As part of their discussion of the primary duties issue, plaintiffs also assert briefly that the salary element of the exemption—prong (g)—is subject to common proof.  The trial court rejected this argument, noting that plaintiffs' evidence established at most that the minimum salary threshold was not met for some pay periods for some putative class members.  The court explained that, "[f]ar from supporting Plaintiffs' position, that finding only reinforces the conclusion that common issues do not predominate, since it highlights the need to conduct an individualized analysis of each class member and each pay period over the entire class period in order to

7

the wage order defines "primarily" as "more than one-half the employee's work time." (Cal. Code Regs., tit. 8, § 11040, subds. 1(A)(2)(f), 2(N).) It also instructs that in determining whether an employee is primarily engaged in such duties, "[t]he work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f).)

As to the nature of work, the wage order provides that "[t]he activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order [2001]: 29 C.F.R. Sections 541.201–205, 541.207–208, 541.210, and 541.215." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f).) The wage order further recognizes that "[e]xempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions." (*Ibid.*)

In outlining the scope of the administrative exemption in the IWC's wage order, the trial court referred to current federal regulations pertaining to an analogous administrative exemption in federal law. The federal regulations state: "An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's

---

determine the applicability of the administrative exemption." Plaintiffs do not show that the court's analysis of the salary element of the exemption is erroneous.

customers. Thus, for example, *employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example)* may be exempt." (29 C.F.R. § 541.201(c) (2024), italics added.)

The trial court also noted that a related regulation identifies examples of potentially exempt employees and expressly addresses financial consultants or advisors, the putative class members here. That regulation states: "Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption." (29 C.F.R. § 541.203(b) (2024).)

Plaintiffs contend the FAs' "primary duty" is selling financial products, so under the last sentence of 29 Code of Federal Regulations part 541.203(b) (2024) (part 541.203(b)), they do not qualify for the administrative exemption. The trial court rejected this argument, finding it was not supported by the record and was contradicted by plaintiffs' own evidence. The court further stated that, even if it were true as to certain individual members of the putative class, determining the applicability of defendants' defense "would require a fact-intensive inquiry into the tasks, practices, and schedules of each of the 310 putative class members over the entire fifteen-year class period." In particular, the court found the evidence did not show (and plaintiffs could not show by common proof) that more than half of FAs' work

time was spent selling financial products and thus that it was their primary duty.  (See Cal. Code Regs., tit. 8, § 11040, subds. 1(A)(2)(f), 2(N).)

On appeal, plaintiffs challenge this finding, but they do not dispute that the FAs performed the activities identified in the first sentence of part 541.203(b) as duties that generally satisfy "the duties requirements for the administrative exemption," such as collecting and analyzing information about a client's financial condition and needs, advising the client about suitable financial products and strategies, and marketing or promoting the employer's financial products.  Indeed, as the court noted, these types of duties were essential to the "suitability analysis" that was a core part of the FAs' job.  Plaintiffs also do not dispute the court's finding that there was wide variation in the tasks and duties performed by FAs, "depending on numerous factors including individual FAs' own decisions, experience levels, the day or week in question, the clients' needs, etc."

Instead, plaintiffs contend the court erred by "ignoring [plaintiffs'] theory" and by misconstruing the above federal regulation—part 541.203(b).  Pointing to the last sentence of part 541.203(b) (which states an employee whose "primary duty" is selling financial products does not qualify for the administrative exemption), plaintiffs argue the regulation should be construed to mean that the exemption does not apply if the employee's *other duties*—even those specifically identified in the regulation as generally meeting the duties requirement for the exemption—can be characterized as serving the goal of selling financial products.  And plaintiffs assert they can establish by common proof (such as evidence of defendants' compensation policies) that these "ancillary tasks" were "in furtherance of selling financial products."

10

Plaintiffs concede that, if they do not prevail on their argument as to the correct interpretation of part 541.203(b) (which they describe as the "fundamental issue on appeal"), then evidence of the variability of FAs' tasks and duties "becomes relevant," and plaintiffs "cannot overcome the individualized issue inquiry," i.e., they cannot establish that common questions will predominate in determining the applicability of the administrative exemption. We reject plaintiffs' suggestion that the last sentence of part 541.203(b) obviates the need to conduct individualized inquiries, and we therefore affirm the trial court's class certification denial.

As an initial matter, we recognize (as defendants point out) that the current federal regulation on which plaintiffs base their argument—part 541.203(b)—is not made directly applicable here by the governing California wage order (IWC wage order 4-2001). As noted, the wage order (which took effect in 2001) borrows certain federal regulations that were in effect at that time, including the then-current version of 29 Code of Federal Regulations part 541.203. (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f) ["The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order [2001]: 29 C.F.R. Sections 541.201–205, 541.207–208, 541.210, and 541.215."].) The current version of part 541.203 was promulgated in 2004 and "includes illustrations of the application of the administrative duties test to particular occupations" (with some of the examples being drawn from existing regulations or case law). (Defining and Delimiting the Exemptions

11

for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22122, 22144 (Apr. 23, 2004).)[6]

But in any event, even taking current part 541.203(b) into consideration (which, as noted, the trial court did here),[7] we reject plaintiffs' suggestion that the language of that regulation (or any other authority) renders unnecessary an inquiry into how different employees spend their time. Plaintiffs contend broadly that the trial court was wrong to focus on the proportion of time an employee spends on exempt or nonexempt duties, a question that could only be answered through an individualized, fact-specific inquiry, rather than through common proof. But the court was correct to view this inquiry as centrally important. As noted, under the governing IWC wage order, an essential element of the administrative exemption is that the employee "is primarily engaged in duties that meet the test of the exemption"

---

[6] The version of 29 Code of Federal Regulations part 541.203 that was in effect in 2001 addressed a different topic—the contours of the requirement that an exempt administrative employee must perform "office" work or "nonmanual" work. (29 C.F.R. § 541.203 (2001); see 29 C.F.R. § 541.2 (2001).)

[7] While plaintiffs are incorrect in asserting that the specific language in current part 541.203 has been directly incorporated into the IWC's wage order, the trial court correctly recognized it may be appropriate to consider federal regulations as aids in interpreting California's administrative exemption, and it did not err by considering current part 541.203(b). (See *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 903 ["In the absence of controlling or conflicting California law, California courts generally look to federal regulations under the FLSA for guidance."].) But in considering this and other federal regulations, of course, we recognize it is the IWC's wage order that ultimately defines the scope of the administrative exemption here, and the language of federal regulations is not dispositive. (See *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 798 (*Ramirez*) ["where the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced"].)

(Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f)), and the wage order defines "primarily" to mean "more than one-half the employee's work time" (*id.*, subd. 2(N)).[8]

We reject plaintiffs' argument that our Supreme Court's decision in *Ramirez* provides a basis to depart from this rule. In *Ramirez*, which involved an "outside salesperson" exemption structured similarly to the administrative exemption here, the Supreme Court explained that the applicable wage order there took a quantitative approach focusing on the amount of time an employee spent on sales (*Ramirez, supra,* 20 Cal.4th at p. 797), but that application of that approach required consideration of "the *realistic* requirements of the job," rather than a strict focus on either the actual hours spent on sales or an employer's view of the number of hours the employee *should* have worked (*id.* at p. 802). The court stated: "On the one hand, if hours worked on sales were determined through an employer's job description, then the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that had little basis in reality. On the other hand, an employee who is supposed to be engaged in sales activities during most of his working hours and falls below

---

[8] The federal regulation on this point has not been incorporated into the wage order, but in any event it too places importance on the amount of time an employee spends performing exempt work, along with other factors. (29 C.F.R. § 541.700(a) (2024) [stating in part, "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."]; see *id.*, § 541.700(b) (2024) [noting that even employees who do *not* spend more than 50 percent of their time on exempt work "may nonetheless meet the primary duty requirement if the other factors support such a conclusion"].)

the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption." (*Id.* at p. 802.)

The *Ramirez* court explained that these nuances affect a trial court's task in determining the applicability of the exemption. "A trial court, in determining whether the employee is an outside salesperson, must steer clear of these two pitfalls by inquiring into the *realistic* requirements of the job. In so doing, the court should consider, first and foremost, how the employee actually spends his or her time. But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job." (*Ramirez*, *supra*, 20 Cal.4th at p. 802.) *Ramirez* thus directs that a trial court is to consider—as a centrally important factor—how an employee spends his or her time, although it is to consider other factors as well in determining the applicability of an exemption.[9] The trial court did not abuse its discretion in determining that this would be a highly fact-intensive inquiry.[10] Plaintiffs have not shown error.

---

[9] As noted, IWC Wage Order No. 4-2001 reflects the *Ramirez* requirement that a trial court focus on the employee's duties and the amount of time the employee spends on them, together with the employer's realistic expectations and the realistic requirements of the job. (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f).)

[10] Plaintiffs also point to a passage in *Ramirez* where the court noted that some activities related to sales, "such as preparation, travel time, and paperwork," may properly be considered as time devoted to sales. (*Ramirez*, *supra*, 20 Cal.4th at p. 801.) But contrary to plaintiffs' view, we do not read *Ramirez* as providing a basis for sweeping into the sales category such functions as the analysis and advice provided by a financial or investment advisor. Moreover, even if some activities related to sales should be

Plaintiffs are also incorrect in asserting that the language of current part 541.203(b) obviates the need to conduct an individualized inquiry to determine whether an employee is covered by the administrative exemption. As noted, the first sentence of that regulation states that employees in the financial services industry "generally meet the duties requirements for the administrative exemption" if their duties include work such as collecting and analyzing information about their clients' financial situation and determining an appropriate investment strategy—duties the FAs perform. (29 C.F.R. § 541.203(b) (2024).) The second sentence of part 541.203(b) states: "However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption." (*Ibid.*)

In our view, part 541.203(b)—like the California wage order at issue here—requires a determination as to which duties an employee performs. Employees who perform the research, analysis, and advice functions outlined in the first sentence of the regulation—duties that involve significant discretion and judgment appropriate for trained and licensed professionals such as the FAs—generally meet the duties requirements of the exemption. The regulation's second sentence covers employees who perform less complex work and sell financial products but do not analyze or advise on financial matters. (E.g., *Tsyn v. Wells Fargo Advisors, LLC* (N.D. Cal. Feb. 16, 2016, No. 14-cv-02552-LB) 2016 WL 612926, pp. *11–*12.) If an employee performs both types of duties, it is necessary to determine which type the employee "primarily" performs, a fact-intensive inquiry. (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(f) [exemption applies if, among other requirements, the employee is "primarily engaged in duties that meet the test

considered as part of the sales category, making that assessment for each FA remains a fact-intensive, individualized inquiry.

15

of the exemption"]; see 29 C.F.R. § 541.203(b) (2024) [exemption does not apply if employee's "primary duty" is selling financial products].)

We are not persuaded by plaintiffs' contrary view that the duties an employee performs are not important, as long as the employee performs some sales and the employee's other duties can be characterized as being related to or in service of those sales. Such an expansive reading of the regulation's second sentence (sweeping in not just sales but any other duty that can be linked in some manner to sales) would obviate the provision's first sentence (at least as to financial advisors who receive commissions), which identifies duties that generally *do* meet the duties requirements of the exemption. (29 C.F.R. § 541.203(b) (2024).) We decline to adopt an interpretation of the regulation that renders much of its language irrelevant.

We also note that, when the United States Department of Labor (DOL) promulgated part 541.203(b) in 2004, it explained that an employee's performance of some sales work does not render the administrative exemption inapplicable. (Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22122, 22146 (Apr. 23, 2004) ["many financial services employees qualify as exempt administrative employees, even if they are involved in some selling to consumers"]; *ibid.* ["the final rule rejects the view that selling financial products directly to a consumer automatically precludes a finding of exempt administrative status"].) Plaintiffs argue the DOL's views should be ignored because the plain language of part 541.203(b) establishes plaintiffs' interpretation is correct. As discussed above, we disagree and conclude the language of the regulation itself is most reasonably construed as requiring a determination as to what duties an employee

performs and a factual assessment of what the employee's primary duties are.

For the foregoing reasons, we conclude the trial court did not err when it found that determining the applicability of the administrative exemption to the 310 putative class members would require an individualized, fact-intensive inquiry into the duties the FAs performed and how much time they devoted to those duties. Contrary to plaintiffs' assertion, the trial court did not "ignore[]" their theory on this point. Instead, the court addressed plaintiffs' theory and determined the law and the evidence did not support it. The court did not abuse its discretion, or otherwise err, by concluding that plaintiffs had not met their burden to show that common issues (rather than individual issues) would predominate in determining the applicability of the administrative exemption. We will affirm the court's order denying class certification.[11]

---

[11] Because we uphold the denial of class certification based on the predominance of individual issues in applying the administrative exemption, we need not address the parties' arguments as to whether individual issues would also predominate in applying the other exemptions invoked by defendants—the outside salesperson exemption and the commissioned employee exemption. Like the trial court, we reject plaintiffs' argument that it was improper for defendants to present the three exemptions as alternative defenses potentially applicable to putative class members. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 240–241 [defendants may plead inconsistent defenses].)

We also need not address defendants' contentions that affirmance is appropriate on the alternative grounds that (1) plaintiffs' opening brief does not provide a fair summary of the evidence presented in the trial court, and (2) plaintiffs' opening brief does not challenge the trial court's conclusion that plaintiffs' proposed trial plan was inadequate.

## III. DISPOSITION

The order denying class certification is affirmed.  Defendants shall recover their costs on appeal.


          STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.